## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ELANA MUKHINA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **CIVIL ACTION NO. 22-361-JB-C** |
| | ) |
| **WAL-MART, INC.,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. 31) *pro se* Plaintiff's opposition thereto (Doc. 35), Defendant's reply (Doc. 38), and Defendant's Motion to Strike Plaintiff's Affidavit (Doc. 37), Plaintiff's response in opposition thereto (Doc. 43) and Defendant's reply (Doc. 44).  After careful consideration of the relevant motions, briefs, and evidentiary materials (Docs. 32, 33, and 35-1) and for the reasons explained below, the Court finds that Defendants' motion for summary judgment should be **GRANTED**.

### I.    FACTS

On September 12, 2022, Plaintiff, Elena Mukhina ("Mukhina") filed this action against Wal-Mart Inc., her former employer, alleging that she had been discriminated against based on her national origin and religion and retaliated against in violation of Title VII of the Civil Rights Act of 1964.  (Doc. 1). Mukhina is of Russian origin and practices Russian Folk Christianity.  (*Id*. at 3).

According to her Complaint, Mukhina lived in Russia for forty-seven years before moving to America.  (*Id*. at 4) She was granted asylum in 2018.  (*Id*.).  Although Mukhina has had some education in the English language, she "does not understand live speech well and cannot speak

English." (*Id*. at 5).

In March of 2019, Mukhina was hired by Wal-Mart in Washington, but quit after approximately four months due to her need to obtain medical insurance. (*Id*. at 7). After moving to Texas months later, Mukhina again applied for a position at Wal-Mart, but she was informed she could not be hired because she did not speak English. (*Id*. at 8). In 2021, Mukhina moved to Daphne, Alabama and again applied for work at Wal-Mart. Plaintiff was ultimately offered a position working in the back of the store on the night shift at Wal-Mart Store #934 in Daphne, Alabama. (*Id*. at 9). According to Plaintiff, the offered position was due to her limited English. (*Id*.) However, because of her previous experience in the Apparel Department in Washington, Mukhina asked to be placed in Apparel. Wal-Mart obliged. Mukhina began her employment on September 27, 2021, as a full-time employee in the Apparel Department working from 2p.m. to 11p.m. (*Id*.)

Almost immediately upon starting her position, Mukhina was faced with a high number of Wal-Mart patrons with questions. According to Mukhina, approximately 30% of customers expressed their dissatisfaction with her inability to speak English; many were angry and shouted offensive words which made Mukhina feel uncomfortable. (*Id*. at 11). After two weeks of work, Mukhina became afraid of customers and attempted to hide within the department during her shift. (*Id*. at 13). At some point, Mukhina was told by a manager to work as a hostess, but Mukhina refused believing it was unsafe which caused her managers to get angry and coworkers to look at her "with condemnation". (*Id*.).

On one occasion Mukhina was yelled at by a manager for not having keys to the jewelry department.  (*Id*. at 14).   On other occasions, employees laughed at Mukhina for not understanding her or shouted as if she was deaf.  (*Id*.)  Mukhina asserts that her work was checked by not only team leaders but also by other employees who were surprised when her work was in order.  (*Id*.). According to Mukhina, employees did not speak slowly and seemed aggravated when a telephone translator was used.  (*Id*.)

On October 20, 2021, Mukhina was given keys to the Jewelry Department by a team leader before the team leader left for the day.  (*Id*.).  Later, when a call for assistance in the department was made, Mukhina went to help the customer, who became angry and shouted at her when he realized she could not help him.  (*Id*. at 15).  Mukhina decided to seek assistance from her Coach, Donald Bayard ("Bayard"), by approaching him with her daughter to translate for her.  (*Id*.)  Bayard was informed customers were verbally attacking Mukhina because she did not speak English and Plaintiff requested to be changed to night shift. (*Id*.)  Bayard replied that customers were rude to him as well and that he would move her, but he could not do so until he found a replacement for her day shift.  (*Id*.).  While waiting to be moved, Mukhina continued to experience situations where customers were unhappy with her inability communicate.  (*Id*.)  Additionally, Mukhina asserts employees laughed at her, she was not permitted to use shopping carts for work while other employees could, she was not addressed by her name over the radio, and not informed when she needed to complete training courses.  (*Id*. at 17).

In late November, Mukhina was asked to work the Jewelry Department by a team leader and she attempted to refuse. (*Id*. at 19). At some point Mukhina's daughter was asked to inform the team leader, Stephanie, that store patrons were harassing her to which the team leader

replied that it was because she did not speak English, but she promised to talk to Bayard.  (*Id*.)  Later, in February, Mukhina's daughter followed up with Bayard regarding the night shift position and he responded with an inquiry of whether Mukhina still wanted to move. (*Id*.).  Bayard then indicated that the store was short staffed, and others were waiting as well. (*Id*.).  Again, Mukhina reported problems with customers and used the term "discrimination." (*Id*.).  Bayard promised to talk to the general manager to resolve the situation, but he was then moved and Mukhina was given a new supervisor.  (*Id*. at 20).

In April 2021, Mukhina approached her new supervisor (again with her daughter to translate) about moving to night shift.  The new supervisor promised Mukhina a move would be made, and Mukhina was placed on the night shift on May 12, 2021.  (*Id*.). Mukhina believed her co-workers faulted her for moving to night shift and states that she was required to sort returns and work in the back of the store while others were not. (*Id*.).  Mukhina alleges she was also made to get her own pallets of freight.  However, overall, the move to night shift improved Mukhina's environment and she even received praise for her work.  (*Id*. at 22-23).

In mid- December 2021, Mukhina realized she was scheduled to work New Year's Eve, an important Russian holiday.  (*Id*. at 23).  Mukhina requested an unpaid day off using the Wal-Mart application, which was rejected on December 17, 2021. (*Id*. at 24). The following day, Mukhina and her daughter approached Crystal Croll ("Croll") (who denied the request) to explain the reason for the request.  (*Id*.; Doc. 33 at 5). Croll informed Mukhina that she was not approving days off for New Year's Eve for anyone in order to be fair to everyone. (*Id*.). Mukhina attempted to explain that New Year is like Christmas for Americans, but was told by Croll that she did not approve New year's off for anyone.  (*Id*.).

4

On December 23, 2021, Mukhina filed a complaint with the Wal-Mart Ethics Department for discrimination and harassment in the workplace.  (*Id*. at 25).[1]  On December 31, 2021, Mukhina did not report to work and received two penalty points for her absence pursuant to Wal-Mart policy.  (*Id*.). According to Mukhina, after making her ethics complaint, the attitude of her coworkers changed, even though the reporting process was supposed to be confidential. (*Id*.).  On January 26, 2022, the Wal-Mart Ethics Department interviewed Mukhina via telephone. (*Id*. at 26).  Also in January, Mukhina experienced an injury which affected her ability to walk. (*Id*. at 26-29).  Overall, however, her job environment improved, and Mukhina was planning to seek a transfer to another store when she became eligible on March 27, 2022.  (*Id*. at 28-29).

On March 20, 2022, an unknown employee approached Mukhina in the Children's Department, who became agitated upon realizing Mukhina did not speak English.  The employee then rudely asked where Mukhina was from, to which Mukhina responded, "from Russia".  (*Id*. at 29-30).  The employee then angrily made a statement to Mukhina using the words "Russia", "Ukraine", "invasion" and "f*** you."  *(Id*. at 30).  Mukhina walked away from the confrontation and took paid time off to think about the interaction.  (*Id*. at 30).  After reflection, Mukhina decided she could no longer tolerate the harassment and quit her job. (*Id*.).  Mukhina's daughter returned Mukhina's cell phone to Wal-Mart and informed Wal-Mart that Mukhina quit.  (*Id*.). Mukhina was officially terminated on April 4, 2022. (*Id*.)

On June 8, 2022, Mukhina filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on retaliation and National Origin.  (Doc. 35-1 at 26).

---

[1] It is undisputed that prior to her ethics complaint based on her religion, Plaintiff was aware of Wal-Mart's reporting procedures but did not formally report any claim of discrimination to Wal-Mart.  (Doc. 33 at 10; Doc. 32-2 at 8)

The instant litigation followed.

## II.      DISCUSSION

### A.      Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash*

*Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B.      Title VII**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).   A plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). If a plaintiff supports his claims with circumstantial evidence, the claim must be analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1087 (11th Cir.2004). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id*. Once a prima facie case of discrimination is established, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was a pretext for discrimination. *See id*.

### 1.      Discrimination based on National Origin

Defendant seeks summary judgment on Plaintiff's national origin discrimination claim based on her failure to present evidence of discrimination due to her national origin or otherwise. (Doc. 33 at 7).   More specifically, Defendant argues that Plaintiff's complaints arise, not from her Russian nationality, but from her inability to communicate in English.  (*Id*.).  Moreover, Defendant contends that regardless of whether her alleged discrimination can be attributed to her national origin, summary judgment is still warranted because the alleged harassment does not rise to the level required to sustain a Title VII claim.  (*Id*. at 8-10).  Further, Defendant asserts that Plaintiff's claim fails because she failed to report the instances of alleged harassment to her superiors.  (*Id*. at 10-11).  Finally, Wal-Mart contends that Plaintiff has not presented facts to establish that she

was constructively discharged.  (Id. at 10-12).

According to Plaintiff, she endured a hostile work environment due to her national origin because she was repeatedly subjected to abusive comments and harassment. (Doc. 35 at 10). For example, Plaintiff was told: "Talk to me in English! Or go back to you Moscow". *Id*.  Plaintiff contends she was subjected to this conduct on a daily basis, starting with jokes and escalating to threats of physical abuse. (*Id*. at 11).  Plaintiff further alleges this conduct interfered with her job performance as she had to "hide somewhere deeper in the department". (*Id*. at 11).  According to Plaintiff, not only customers, but managers and associates took an active role in her harassment.  (*Id.* at 12). Additionally, Plaintiff contends she informed management of ongoing harassment from customers and other employees and management failed to take appropriate corrective action.  (*Id*).  Finally, Plaintiff contends she was constructively discharged due to Wal-Mart's failure to appropriately address her continued harassment.  (Id. at 22-23).

### a.    Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must present evidence from which a jury could find that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on the protected characteristic of the employee; (4) the harassment was severe or pervasive enough to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the harassment under a theory of either direct or vicarious liability. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

Hostile work environment claims involve both a subjective and objective component. Plaintiff must show that she "'subjectively perceive[d]' the harassment as sufficiently severe and

pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The objective component of the analysis is a fact-intensive inquiry, and "the Supreme Court and [Eleventh Circuit] have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *See Id.*; *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367). No single factor is dispositive. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

The conduct must be examined in context, not as isolated acts, and the severity and pervasiveness of the conduct must be judged under the totality of the circumstances. *Allen*, 121 F.3d at 647. " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to "amount to discriminatory changes in the 'terms and conditions of [a person's] employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted).

Here, Plaintiff has failed to present evidence that she was subjected to a hostile work environment.  Although, Plaintiff is a member of protected class, there are insufficient facts to establish the remaining elements of her claim.  As an initial matter, Plaintiff has not established that her alleged harassment was based on her national origin.   While Plaintiff correctly points

out that language can be an essential national origin characteristic, she has not linked her use of the Russian language to her alleged harassment in this instance.  Instead, considering the facts as described by Plaintiff, supports that the alleged hostility she faced was directed at her inability to communicate.  An extrapolation that her inability to communicate is equivalent to harassment based on her nationality, is simply not supported by the record.  As a result, the record lacks facts to substantiate that her alleged harassment was based on her protected characteristic.

Even assuming Plaintiff's factual allegations could establish that she was subjected to harassment based on her national origin, there remains no evidence that the harassment was severe or pervasive enough to alter the terms and conditions of her employment or that Defendant was responsible for the harassment.  Rather, the evidence shows that Plaintiff was routinely met with a negative reaction when she was unable to assist customers as an employee due to her inability to communicate in English.  By Plaintiff's account, about 30% of customers responded with dissatisfaction, laughter, mockery, or anger when they learned Plaintiff did not speak English.  Even if Plaintiff felt that the remarks subjectively altered her work environment, her belief is not objectively reasonable.

Plaintiff was a non-English speaking employee performing a job which required the ability to communicate in English.  Unsurprisingly, when she was unable to communicate, customers were not always pleased.  Although Plaintiff contends that she was met with dissatisfaction daily, there are no facts to quantify the number of times she was allegedly faced with harassment. Nevertheless, the encounters Plaintiff describes are not severe, but are more accurately described as an "offensive utterance".  *See Mendoza*, 195 F.3d at 1246. Finally, there is no dispute that during her employment, Plaintiff's encounters did not prevent her from continuing her work.

In sum, considering the facts in a light most favorable to Plaintiff, the record fails to establish that Plaintiff was subjected to severe or pervasive harassment based on her national origin which altered the terms and conditions of her employment.

Finally, Plaintiff has not set forth facts to establish Wal-Mart's culpability.  It is undisputed that prior to her ethics complaint based on her religion, Plaintiff was aware of Wal-Mart's reporting procedures but did not formally report any claim of discrimination to Wal-Mart.  (Doc. 33 at 10; Doc. 32-2 at 8).  Moreover, the record reflects that Plaintiff was initially hired to work in the back of the store and was placed in the front of the store to only accommodate Plaintiff's own request, despite her language deficits.  Plaintiff then refused to work in other areas and suffered no consequences for her refusals.  Plaintiff complained generally to her manager on one occasion about customers being rude and requested a transfer to the night shift.  (*See* Doc. 35-1 at 13-16).  Plaintiff was told that Wal-Mart would try to move her to night shift as soon as practicable, but Plaintiff acknowledged the store was short-staffed and was informed a replacement would need to be hired first.  (*Id*. at 17-18).  Finally, when Plaintiff ultimately expressed her concern that she was being discriminated against the following conversation took place:

A:   It's not just because she wants to go [to night shift].  It's not like other workers. Its discrimination.

D:   How is it discrimination? What's discrimination?

A:   Because she cannot speak English and she always experiencing the harassment and all this stuff.

D:   From customers or from associates?

A:   Yes, from everybody, and associates as well.

D:      The first you said it was just a customer got upset, now its associates?

A:      Yeah.

D:      Okay, associates wasn't brought to my attention, so what associates?

A:      Associates come to her, asking something and they laughing at her, that she is not speak English, they point on her fingers, and all t[h]is.  Some Associates they use a translator if they want something, but some of them they just laughing, some of them became angry because she is not understanding.

D:      Okay, so I can make a transaction to happen and her to go overnight before I leave […] So, but what I was saying is if we gonna claim discrimination and there is associate laughing at you and making fun of you, I need names, because this can open up an investigation, so I need facts.

A:      She doesn't know names. Last time overnight associates laughing at her.

D:      Overnight?

A:      They just passing by, asked something and they laughing.

D:      From what department?

A:      She doesn't know what department they passing by, there is a lot of associates working here.

D:      So it is just in general from everybody?

A:      Yeah, general from everybody, not exact person that always laughing at her.

D:      Okay, I am a [sic] get Brandy to know about it. Brandy is store manager. I'll let her know the situation that's going on.

(*Id*. at 18-19). Plaintiff was then moved to night shift as she requested. Although Plaintiff was dissatisfied that it took six weeks for the transfer to occur instead of two, there are no facts to suggest that the delay was the result of anything other than a need to hire additional staff to replace Plaintiff.

Plaintiff contends that once on night shift, her co-workers faulted her for moving.  She also asserts that she was required to sort returns and work in the back of the store while others were not and was made to get her own pallets of freight.  Again, there is no evidence that these alleged differences were the result of her national origin.  Further, Plaintiff acknowledges that the move to night shift improved her work environment and she received praise for her work.  Importantly, following her transfer, Plaintiff did not make any report or claim of harassment, identify any specific incident of harassment to her superiors, or identify any alleged harassers to her superiors.  As such, even if Plaintiff had established the first four elements of her hostile work environment claim, the record reflects that she did not notify Wal-Mart of any specific instances of harassment and that when Wal-Mart was told generally that Plaintiff believed she was facing discrimination, it took steps to accommodate her request to transfer to overnight after which no other complaints were made.  As a result, Plaintiff has not presented a dispute of material fact that Wal-Mart was responsible for the harassment under a theory of either direct or vicarious liability and her claim is due to be summarily dismissed.

### b.   Constructive Discharge

Wal-Mart additionally contends that Plaintiff fails to establish that her voluntary resignation constituted a constructive discharge.  (Doc. 33 at 11).

> "In order to show constructive discharge, [...] the plaintiff must show that the situation was so intolerable that he had no choice" but to separate from his employment. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 806 (11th Cir. 2005).
>
> [...]
>
> The threshold for establishing constructive discharge ... is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). The standard is higher than proving, for example, that a hostile work environment existed. *Id*. To demonstrate a constructive discharge

occurred, there must have been "pervasive conduct." *Id*. "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Russell Corp*., 218 F. Supp. 2d 1283, 1299 (M.D. Ala. 2002) (emphasis added) (internal marks omitted) (quoting *Matvia v. Bald Head Is. Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001)); *see also Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002) ("Constructive discharge requires considerably more proof than an unpleasant ... environment.").

*Blake v. City of Montgomery, Alabama*, 492 F.Supp.3d 1292, 1306-07 (M.D. Ala. October 6, 2020).

An employee has no cause of action when she assumes the worst and resigns rather than seek remedies the employer has made available. *See* Mosley v. AM/NS Calvert, LLC, 2022 WL 703601, *21 (S.D. Ala. 2022) citing to *Wingfield v. South Univ. of Fla., Inc.*, 2010 WL 2465189, *10 (M.D. Fla. Jun. 15, 2010) (footnote omitted) ("in disability discrimination claims ... the law 'does not create a cause of action for constructive discharge where the employee assumes the worst and resigns before giving management a chance to rectify the situation.' [ ] Unless the employer gets sufficient time to remedy the intolerable working conditions, 'a constructive discharge generally will not be found to have occurred.' [ ] In this case, Wingfield assumed the worst[ ]"); *Schwertfager v. City of Boynton Beach*, 42 F.Supp.2d 1347, 1368 (S.D. Fla. 1999) (finding that because the plaintiff did not give her employer sufficient time to remedy the situation by bringing her complaints to its attention, she had not shown constructive discharge).

The facts as established by Plaintiff indicate that on March 20, 2022, an unknown employee approached Mukhina in the Children's Department and became agitated upon realizing Mukhina did not speak English.  (Doc. 1 at 29.). The employee then rudely commented on her being Russian and angrily stated something to Mukhina that she did not understand but involved the "f" word.  (*Id*. at 29-30).  Mukhina walked away from the confrontation and took

paid time off to think about the interaction. (*Id*. at 30). After reflection, Mukhina decided she could no longer tolerate the harassment and quit her job. (*Id*.).

Based on the above facts, Plaintiff's has not established that she was constructively discharged. As discussed herein above, Plaintiff has not shown that she was subjected to a hostile work environment prior to the March 20, 2022, incident. Moreover, the March incident, as described by Plaintiff, is not severe or intolerable. Additionally, and importantly, there is no dispute that Wal-Mart was not notified of the incident of March 20, 2022, either informally or formally. Finally, after making no effort to complain of the incident, Mukhina simply assumed no action would be taken to cure the behavior of the unidentified associate and voluntarily quit. Again, Mukhina made no mention of the incident when she quit. As a result, Mukhina has presented no facts to support that she was constructively discharged.

### 2.    Discrimination based on Religion

According to Wal-Mart, summary judgment is warranted on Plaintiff's religious discrimination claim because Plaintiff has failed to exhaust her administrative remedies and because even if her claim were not barred, she has failed to present facts to establish discrimination. (Doc. 33 at 12-14). In response, Plaintiff argues that she attempted to raise the religion claim to the EEOC, that the claim is not barred based on the continuing violation doctrine, and that she was discriminated against based on her religion. (Doc. 35 at 13-17)

Plaintiff's religion-based discrimination claim stems from a single incident. According to Plaintiff and undisputed by Wal-Mart, in mid-December, after Wal-Mart posted its employee work schedules for New Year's Eve, Plaintiff sought to take-off on New Year's Eve and her request was denied. (Do. 1 at 23-24). The following day, Mukhina and her daughter approached Croll

(who denied the request) to explain the reason for the request.  (*Id*.). Croll informed Mukhina that she was not approving days off for New Year's Eve for anyone in order to be fair to everyone. (*Id*.). Mukhina attempted to explain that New Year is like Christmas for Americans, but was told by Croll that she did not approve New year's off for anyone.  (*Id*.).

On December 23, 2021, Mukhina filed a complaint with the Wal-Mart Ethics Department for discrimination and harassment in the workplace.  (*Id*. at 25).  On December 31, 2021, Mukhina did not report to work and received two penalty points for her absence pursuant to Wal-Mart policy.  (*Id*.). According to Mukhina, after making her ethics complaint, the attitude of her coworkers changed, even though the reporting process was supposed to be confidential.  (*Id*.). On January 26, 2022, the Wal-Mart Ethics Department interviewed Mukhina via telephone.  (*Id*. at 26).

### a.  Failure to Exhaust

According to Wal-Mart, Plaintiff did not raise a claim of religious discrimination to the EEOC, and therefore, failed to exhaust her administrative remedies, barring her claim.  (Doc. 33 at 12).  In response, Mukhina argues that her claim is not barred due to the continuing violation doctrine because the denial of her request was the result of a Wal-Mart policy ("First come/ first served") "that is considered discriminatory prohibited Employment Practice as per Title VII." (Doc. 35 at 13-14).

The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.  *Chanda v. Engelhard/ICC*, 234 F.3d 1219, *1225 (11th Cir. 2000) (internal citation omitted).  A Title VII action, however, may be based "not only upon the specific

complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." (*Id*.) (internal citations omitted).

On June 8, 2022, Mukhina filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on retaliation and National Origin.  (Doc. 35-1 at 26).  In providing the particulars of her claim, Plaintiff did not mention her religion, religious discrimination, or the incident relating to her request for time off on New Year's Eve.  (*Id*.).[2] As such, her claim is now barred.

Without disputing this fact, Mukhina argues that because her request for time off was denied due to a Wal-Mart policy, her claim remains timely as long as the policy is in effect.   (Doc. 35 at 13-14).  For support, Plaintiff relies on *Groff v. DeJoy*, 600 U.S. 447, 143 S.Ct. 2279, 216 L.Ed 1041 (2023) for the proposition that in order to defend its denial of a religious accommodation, an employer must show that the accommodation would result in substantial increased costs. (*Id*.).  *Groff* offers no support for Plaintiff's position because, here, by Plaintiff's own factual evidence she did not inform Wal-Mart that New Year's Eve was a religious holiday, necessitating a defending of its decision.  Additionally, Plaintiff has offered no evidence that Wal-Mart's policy is facially discriminatory or that her claim is not otherwise barred.  As such, Plaintiff's religious

---

[2] To the extent that Plaintiff asserts her religious discrimination claim is related to her national origin claim such that it is covered through the scope of the investigation, this Court is unconvinced.  It does not appear that Plaintiff ever identified the subject holiday as religious in nature to the EEOC.  Rather, as described by Plaintiff, the holiday is a national holiday.  Accordingly, even if the time off request were investigated, there is no evidence that the potential discrimination was religious in nature or that a religious discrimination claim is related to her EEOC claim based on national origin.

discrimination claim is due to be dismissed.

### b.    Prima Facia Case of Discrimination

Assuming arguendo that Plaintiff's religious discrimination claim was not barred, summary dismissal would still be warranted based on the facts of this case.

A plaintiff asserting discrimination on the basis of religion must allege facts giving rise to an inference that: "(1) he is a member of or practices a particular religion; (2) he is qualified to perform the job at issue; (3) he has suffered some adverse employment action; and (4) someone outside the protected class of which he is a member was treated differently." *Some v. Honda Manufacturing of Alabama, LLC*, 2019 WL 1466240, *5 (N.D. Ala April 3, 2019). The "adverse action" prong is met only where it causes "a *serious and material* change in the terms, conditions, or privileges of employment," from the perspective of a reasonable employee. *Id*. quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-40 (11th Cir. 2001) (emphasis original).

According to Plaintiff, New Year's Eve is a religious holiday and Wal-Mart's failure to accommodate her time off request to observe the same was discriminatory.  However, viewing the facts in a light most favorable to Plaintiff, she has failed to establish that she informed Wal-Mart of the religious nature of the holiday.  Instead, according to Plaintiff she "made an effort to let the manager understand the importance of the holiday for her by approaching the manager in person" […] and "compar[ing] the meaning of New Year's Eve for her with US Christmas holiday for Americans." (Doc. 35 at 15).  However, at no time did Plaintiff elaborate in her description to indicate she meant it was  a religious holiday. To the contrary, after filing an ethics complaint due to Wal-Mart's failure to accommodate her religion, the investigation notes state that Plaintiff "clarified that December 31 is not a religious holiday but a very important day in Russia." (Doc.

32-3 at 30-31).  On this record, Plaintiff has not established a connection between her religion and the alleged discrimination.

Further, religious connection aside, there remains no factual support that Plaintiff suffered and adverse employment action as a result of the New Year's Eve events.  Instead, Plaintiff informed Wal-Mart that she would not be working and when she did not report to work, she received two points per Wal-Mart policy.  Otherwise, her absence had no bearing on the terms or conditions her employment.  As such, Plaintiff's religious claim cannot be factually supported and is due to be dismissed.

### 3. Retaliation

According to Wal-Mart, Plaintiff's claim of retaliation is due to be dismissed because there are no facts to support she was subjected to retaliation. (Doc. 33 at 14-15).  More specifically, Wal-Mart contends that Plaintiff has failed to offer facts to raise a reasonable inference that she suffered an adverse employment action.  (*Id*.)

In order to prevail on her claim of retaliation at summary judgment Plaintiff must establish (1) she participated in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two events. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reeves v. DSI Sec. Services, Inc.*, 395 Fed.Appx.544, 547 (11th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 68, 126 S.Ct. 2415, 165 L.Ed.2d 345 (2006).)  "[P]etty slights, minor annoyances, and simple lack of good manners" generally do not rise to the level of materially

adverse actions. *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. at 2415.

Defendant does not dispute that Plaintiff's participation in the "Open Door" process constituted a statutorily protected activity. (Doc. 33 at 14). Accordingly, only the last two elements of Plaintiff's prima facie case are at issue. As for the second element, Plaintiff asserts that following her ethics complaint, the attitude of her co-worked changed. (Doc. 1 at 25). In her response, Plaintiff also references specific events she contends are adverse actions. For example, she states she was reproached by a manager, faced anger and dissatisfaction from managers when she refused to perform other job assignments, was forced to "bring the freight", and was subject to micromanagement. (Doc. 35 at 20-25). However, none of these instances when considered separately or cumulatively objectively dissuade an employee from complaining about discrimination.[3] Further, Plaintiff has not presented facts to establish a causal connection between the allegedly adverse actions and her protected activity. Although, Plaintiff references several instances of frustrating events, the record is clear that most of those events took place prior to her report of discrimination. As a result, Plaintiff cannot establish an adverse employment action occurred as a result of her engaging in a protected activity and her retaliation claim is due to be summarily denied.

### C.    Motion to Strike

Defendant moves to strike various exhibits attached to Plaintiff's Response in opposition to summary judgement. (Doc. 37). However, even construing all facts asserted in the exhibits

---

[3] Plaintiff additionally asserts that the "most severe adverse action" she suffered was her constructive discharge. (Doc. 35 at 22). However, for the reasons stated herein above, Plaintiff has not shown that she was constructively discharged. Moreover, Plaintiff makes no attempt to causally link her religious discrimination complaint in December and the actions of the unidentified employee (not based on religion) which occurred in the following March.

and all reasonable inferences therefrom in the light most favorable to Plaintiff, the Court finds that Defendant is due judgment as a matter of law on Plaintiff's claims under Title VII.  As such, Defendant's Motion to Strike is rendered **MOOT**.

**III.     CONCLUSION**

For the reasons stated above, the Court finds that Defendants' motion for summary judgment should be **GRANTED** and Defendant's Motion to Strike is **MOOT**.

**DONE and ORDERED** this 3rd day of January, 2024.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE